**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Accordant Energy, LLC,** | ) | **CASE NO. 1:17 CV 411** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Vexor Technology, LLC,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### INTRODUCTION

This matter is before the Court upon Accordant Energy, LLC's Motion to Dismiss Defendants' Counterclaims for Lack of Subject Matter Jurisdiction (Doc. 109). This is a patent case. For the reasons that follow, the Motion is GRANTED in PART and DENIED in PART. The Counterclaims are DISMISSED, but the Court retains jurisdiction to entertain a motion pursuant to 35 U.S.C. § 285. Should defendant choose to file a Section 285 motion, such motion must be filed on or before February 14, 2019. The brief in opposition is due February 28, 2019, and any reply is due on or before March 7, 2019. The motion and brief in opposition are limited to 15 pages and the reply brief is limited to 10 pages. The parties are not permitted to

1

"incorporate by reference" other case filings.

**FACTS**

Only those facts relevant to a resolution of the instant motion are set forth herein. Plaintiff Accordant Energy, LLC brings this lawsuit against defendants Vexor Technology, Inc. and Vexor Technology, LLC[1] (collectively, "defendant") alleging infringement of United States Patent No. 9,062,268 ("'268 Patent") and United States Patent No. 9,523,051 ("'051 Patent"). Both patents are directed at engineered fuel feed stock. In response to the complaint, defendant filed counterclaims seeking declaratory judgments of invalidity, unenforceability, and non-infringement. During the pendency of this matter, the Court stayed the case for four months in order to allow the parties to pursue settlement discussions. At one point, the Court was informed that the matter had settled. As such, the Court granted an extension to allow the parties to finalize the settlement. Subsequently, the parties informed the Court that a settlement was not, in fact, possible. Plaintiff then moved to dismiss its own claims with prejudice, as well as defendant's counterclaims. The Court granted plaintiff's motion to dismiss its affirmative claims. Attached to plaintiff's motion to dismiss the counterclaims is a covenant not to sue ("Covenant"). The Covenant provides, in relevant part, as follows:

> [Plaintiff], solely on behalf of itself and any successors-in-interest to the '268 Patent and/or the '051 Patent, hereby unconditionally covenants not to file or maintain any lawsuit anywhere in the world against defendant for the infringement or alleged infringement of the [patents] for any past, present, or future manufacture, sale, offer for sale, or importation by [defendant] of the waste-driven fuel currently marketed as Vexor Engineered Fuel®. [Plaintiff] further covenants not to file or maintain any lawsuit anywhere in the world for the infringement or alleged infringement of the [patents] by customers of [defendant], based on the customers' purchase or use of the waste-derived

---

[1] Two other Vexor related entities were voluntarily dismissed without prejudice and are no longer parties to this lawsuit.

2

fuel currently marketed as Vexor Engineered Fuel® and that is manufactured and sold by defendant. This Covenant shall not bind or otherwise apply to any current licensees of the [patents] or to any other third parties....

Plaintiff argues that in light of the Covenant and plaintiff's dismissal with prejudice of its infringement claims, jurisdiction over defendant's counterclaims is lacking. Defendant opposes the motion.

**ANALYSIS**

Subject matter jurisdiction in a declaratory judgment suit requires a "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010)(*quoting MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007)). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory judgment was filed and that it has continued since.*" Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). If a party is charged with infringement, there is necessarily a case or controversy. *Id*. Once the initial burden of establishing jurisdiction is met, jurisdiction will continue absent a change in circumstances or further information is provided. *Id*. at 1344-45. "The burden of bringing forth such further information may logically rest with the party challenging jurisdiction, but the actual burden of proof remains with the party seeking to invoke jurisdiction." *Id*. at 1345 (citations and quotations omitted).

Prior to the Supreme Court's issuance of *MedImmune*, the Federal Circuit applied a "reasonable apprehension of imminent suit" test to determine whether an actual controversy exists. *MedImmune* rejected this approach in favor of a "totality of the circumstances" test,

3

which is used to evaluate whether a controversy is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.

A covenant not to sue coupled with the dismissal with prejudice of pending infringement claims is one piece of "further information" that may divest a court of jurisdiction over declaratory judgment claims. Whether a covenant not to sue rises to this level "depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* 565 F.3d 1294, 1297 (Fed. Cir. 2009).

Here, plaintiff argues that, although the Court undoubtedly had jurisdiction over the counterclaims as initially filed, the dismissal of its infringement claims and the covenant not to sue render jurisdiction lacking because there is no sufficient "immediacy and reality" to warrant the issuance of a declaratory judgment. In response, defendant argues that the Covenant does not eliminate subject matter jurisdiction. According to defendant: the Covenant is vague and ambiguous; the Covenant does not prohibit plaintiff from bringing suit for indirect infringement; the Covenant is impermissibly narrow because it does not cover defendant's ongoing business operations; the Covenant allows plaintiff to sue for infringement by proxy; the Covenant does not prevent plaintiff from interfering with defendant's customers; and the Covenant does not moot defendant's inequitable conduct claim in any event.

Upon review, the Court finds that defendant does not meet its burden of establishing that jurisdiction exists over its claims for declaratory relief.

The Court rejects defendant's argument that the Covenant is impermissibly vague due to the nature of the fuel at issue. Defendant claims that the cases plaintiff relies on involve "static" products that do not change in the course of the manufacturing process. On the other hand, the

4

fuel at issue here is made in batches and the waste streams change with each batch depending on the incoming waste received. In addition, defendant claims that the parties dispute what the product "currently marketed" by defendant actually is. According to defendant, even slight changes to the waste streams or equipment used could render the fuel "different" from the product "currently" marketed. As such, the Covenant does not truly provide any protection from an infringement suit by plaintiff. The Court disagrees with defendant's position. Here, the Covenant broadly protects against an infringement suit with respect to the product "currently marketed as Vexor Engineered Fuel®." The Covenant protects defendant from an infringement suit with respect to the manner and end product currently manufactured by defendant, which was the subject of the infringement claim. The Covenant provides that defendant will not bring an infringement action against defendant for past or future sales of this product. Moreover, in its reply brief, defendant indicates that the covenant language is a "broad, complete, and accurate description of the accused product in this litigation, *and it encompasses the variability that is present in this product as currently sold..."* Given defendant's representation, the product at issue is no different than the "static" products for which similar covenants have been held to defeat federal jurisdiction. *See, e.g., Super Sack v. Chase Packaging Corp.*,[2] 57 F.3d 1054 (Fed. Cir. 1995)(no jurisdiction where covenant promised not to sue with respect to "any claim of the patents-in-suit based upon the products currently manufactured and sold by [defendant]");

---

[2] *Super Sack* and *Amana Refrigeration* were decided pre-*MedImmune*, but the Federal Circuit continues to cite these cases with approval in applying *MedImmune*'s jurisdictional test. *See, e.g., Dow Jones,* 606 F.3d at 1346 ("We affirmed the jurisprudence engendered by *Super Sack* in *Benitec Australia, Ltd. v. Nucleonics*, 495 F.3d 1340 (Fed. Cir. 2007)").

5

*Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999)(covenant not to sue for infringement with respect to products "made, sold, or used" on or before the filing date" divests court of jurisdiction of declaratory judgment action); *Compare, Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009)(jurisdiction exists over declaratory judgment action where covenant did not protect party from infringement suit for future sales of the very product that was the subject of the original infringement action).

To the extent that defendant *alters* its product in the future, the Court looks to the conduct of the party seeking declaratory relief, with an eye to whether the party intends to engage in potentially infringing activity, in order to determine whether an actual controversy exists. *See, Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008)(noting that "the issue of whether there's meaningful preparation to conduct potentially infringing activity remains an important element in the totality of the circumstances" test). Here, defendant argues that it plans to produce fuels that differ from the fuels it currently makes. Defendant claims that its manufacturing processes will involve "different raw materials, using different equipment, and [] different customer specifications." Doc. 116-1 PageID 4487 at ¶ 5. According to defendant, this leaves it open to infringement actions by the plaintiff. But, the mere fact that defendant may choose other raw materials or other machinery does not automatically mean that defendant will be open to an *infringement* action. Defendant acknowledges that plaintiff's primary infringement argument is that defendant's products contain less than 0.01% wt. combustibles. Id. at ¶ 6. There is no indication in the affidavit or argument provided by defendant that it intends to manufacture fuel containing less than 0.01% combustibles. Rather, defendant expressly argues that plaintiff's position is that at some point in the future, defendant could

6

"accidentally" do so. But, this potential for future accidental infringement is too speculative and remote to support jurisdiction *now*. This concern meets neither the reality nor the immediacy requirements necessary to assert a claim for declaratory relief.

Defendant further claims that a case or controversy exists because the Covenant does not prohibit plaintiff from bringing suit for indirect infringement. Plaintiff responds that the Covenant applies to the "sale" of Vexor Engineered Fuel and that any possible claims of indirect infringement would necessarily flow from any such sale. Thus, according to plaintiff, the Covenant does in fact prevent it from bringing suit for indirect infringement. Regardless, in an effort to "remove any possible ambiguity," plaintiff further confirms that the Covenant applies to both direct and indirect infringement. As a result of the "clarification," the Covenant does in fact prevent plaintiff from asserting claims not only for direct infringement, but for indirect infringement as well.

Defendant next argues that jurisdiction exists because the Covenant is impermissibly narrow in that it does not cover defendant's ongoing business operations. Defendant argues that the nature of its business requires setting up related entities at a customer location. Defendant points out that any new entity would not be covered by the Covenant. According to defendant, it has "concrete" plans to expand to new locations. Defendant currently is "in discussions" with parties regarding expansion into three areas and has a "letter of intent" for one location. Defendant is in the process of assessing that market, finding a location, and evaluating local regulations. Defendant notes that it typically forms new entities when entering a new market and those entities obtain licenses from defendant for manufacturing purposes. Yet, the Covenant does not provide protection from suit to defendant's affiliates.

7

Upon review, the Court rejects defendant's argument as the "immediacy" requirement is not satisfied. In *Cat Tech*, the Federal Circuit addressed immediacy in the context of a method patent. There, the court determined that the declaratory plaintiff satisfied the immediacy requirement because plaintiff took "significant concrete steps to conduct [the relevant allegedly infringing] activity." *Cat Tech*, 528 F.3d at 881. Plaintiff designed four different configurations for its devices and generated AutoCad® drawings with respect to three of the configurations. The remaining configuration had been commercially implemented. The Federal Circuit affirmed the district court's jurisdiction over the three non-commercially implemented configurations. The court determined that the steps taken by plaintiff were sufficient to satisfy the "immediacy" requirement because plaintiff can "take no further steps toward manufacturing its loading devices until it receives an order from a customer with appropriate dimensions." In contrast, the steps taken by defendant fall short of establishing immediacy. By defendant's own admissions, extensive efforts are required before any fuel manufactured by defendant becomes commercially available. These efforts include forming entities, researching regulatory requirement, building facilities, and obtaining specific customer requirements. Here, defendant does not indicate that it has a particular fuel that is close to becoming commercially available. Nor does defendant provide any proposed formula of any particular fuel. Rather, at most defendant indicates that it has "plans" to expand and has a "letter of intent." But defendant does not disclose the contents of the letter of intent or explain what that letter covers. By way of example only, the letter of intent may start and end with researching regulatory requirements. Should those requirements prove unworkable for a potential client, it is possible that no fuel will ever be developed. And, by defendant's own admission, the fuels vary by material. Therefore, it is entirely possible that

the potential fuel a potential customer may request would not implicate the patents-in-suit. The Court is sympathetic to the position defendant finds itself in. The nature of defendant's business, however, cannot exempt defendant from the immediacy requirements. Here, defendant does not meet its burden of establishing that federal jurisdiction exists.

Defendant also argues that jurisdiction exists because the Covenant does not prevent defendant from bringing an infringement suit by proxy. Nor does the Covenant obviate jurisdiction because the Covenant does not affirmatively provide that defendant is not an infringer. According to defendant, various customers and potential customers have inquired about the lawsuit and its impact on defendant's ability to continue in the industry. Defendant claims that the only way that it will be "free and clear" of interference from plaintiff is if the Court addresses the merits of the counterclaims. The Court rejects defendant's arguments. Although defendant notes that some of the members of plaintiff's board of directors are also licensees of plaintiff's patents, there is simply no indication whatsoever that any of the licensees are under defendant's control.[3] No licensee took part in this litigation and there is no evidence that defendant faces a "real and immediate" injury from any of plaintiff's licensees. The same holds true with respect to defendant's arguments concerning its reputation. The Covenant provides that neither defendant nor its customers can be sued for infringement based on the manufacturing of the Vexor Engineered Fuel that is currently manufactured. Therefore, there is no real or immediate harm with respect to defendant or its current customers. And, with respect

---

[3] The fact that plaintiff may have attempted to get its licensees to consent to a settlement does not mean that, absent the Covenant, plaintiff will be able to bring an infringement action through its licensees.

9

to potential customers seeking the manufacture of a new fuel, the Court finds that addressing the counterclaims based on these theoretical situations would amount to an improper advisory opinion.

Defendant argues that even if the Covenant moots some of the counterclaims, it does not moot defendant's claim for inequitable conduct. According to defendant, its inequitable conduct claim contains a request for attorney's fees. Defendant claims that courts have routinely held that a court retains jurisdiction to consider a motion for attorney's fees even after an inequitable conduct claim is dismissed.

Upon review, the Court agrees with defendant that the Covenant does not divest the Court over defendant's request for attorney's fees asserted under 35 U.S.C. § 285. The Federal Circuit addressed this very issue in *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242 (Fed. Cir. 2008):

> Although [Bayer] originally sought a declaratory judgment that the four Bayer patents were infringed, Bayer subsequently dismissed its infringement claims under [three patents-in-suit] and filed a....covenant[] not to sue Monsanto... Even if filing such a covenant may divest the court of jurisdiction over a declaratory judgment action regarding these patents...under our precedent the district court retained independent jurisdiction over Monsanto's request for attorneys fees under 35 U.S.C. § 285.

In the event the Court finds that a party engaged in inequitable conduct, the district court must declare a patent unenforceable. *Id*. at 1243 ("this court has long held that the unenforceability of a patent follows automatically once a patent is found to have been obtained via inequitable conduct"). This is so regardless of whether the Court maintains jurisdiction over the counterclaim itself as jurisdiction undoubtedly exists over these issues as a result of defendant's request for attorney's fees pursuant to 35 U.S.C. § 285. *See, Kim Laube & Co. v. Wahl Clipper Corp.*, 2013 WL 12085139 (C.D. Cal. Oct. 17, 2013). Although there is some

disagreement on this issue, this Court reads *Monsanto* to hold that jurisdiction over the counterclaims themselves is lacking, but jurisdiction over plaintiff's anticipated request for fees remains. *Gordon-Darby Systems, Inc. v. Applus Technologies, Inc., Applus Technologies, Inc.*, 2010 WL 5419068 (N.D. Ill. Dec. 23, 2010); *Dodge-Regupol, Inc. v. RB Rubber Products, Inc.*, 585 F.Supp.2d 645 (M.D.Penn 2008). The fee motion is the jurisdictional "hook" that gives the Court the power to declare a patent invalid when no other "case or controversy" exists. Accordingly, the Court will dismiss the counterclaims and allow defendant to file a motion pursuant to 35 U.S.C. § 285 in which defendant may argue that plaintiff's inequitable conduct warrants a declaration of unenforceability. In the event defendant succeeds, the Court undoubtedly possesses jurisdiction to enter a declaratory judgment to the extent necessary to enforce any appropriate fee award.

Plaintiff asks that the Court exercise its discretion and decline to entertain a Section 285 motion. Plaintiff further asks that the Court restrict discovery. Because these issues were raised for the first time in a reply brief, the Court will not address them at this point. Plaintiff remains free to argue in its brief in opposition to any Section 285 motion that the Court should decline to hear the motion in the first instance. The Court cautions defendant that it is not inclined to re-litigate the issues that defendant raised in connection with its Rule 11 motion for attorney's fees. As noted by the Court in *National Products*, the court need not "allow fee litigation to be the tail that wags the dog." *See, National Products, Inc. V. Gamber-Johnson, LLC*, 2008 WL 1134346 at *5 (W.D. Wash. April 23, 2008).

**CONCLUSION**

For the foregoing reasons, the motion to dismiss is GRANTED in PART and DENIED in

11

PART. The Counterclaims are DISMISSED, but the Court retains jurisdiction to entertain a motion pursuant to 35 U.S.C. § 285.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Chief Judge

Dated: 2/1/19