**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Accordant Energy, LLC, | ) | **CASE NO. 1:17 CV 411** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| Vexor Technology, LLC, | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| Defendant. | ) | |

<u>**INTRODUCTION**</u>

This matter is before the Court upon Vexor's Motion for Sanctions Under Fed. R. Civ. Pro. 11 (Doc. 106). This is a patent case. For the reasons that follow, the motion is DENIED.

<u>**FACTS**</u>

Only those facts relevant to a resolution of the instant motion are set forth herein.

Plaintiff Accordant Energy, LLC brings this lawsuit against defendants Vexor Technology, Inc. and Vexor Technology, LLC (collectively, "defendant") alleging infringement of United States Patent No. 9,062,268 and United States Patent No. 9,523,051. Both patents are directed at engineered fuel feed stock. In response to the complaint, defendant filed counterclaims seeking

1

declaratory judgments of invalidity, unenforceability, and non-infringement. During the pendency of this matter, the Court stayed the case for four months in order to allow the parties to pursue settlement discussions. At one point, the Court was informed that the matter had settled. As such, the Court granted an extension to allow the parties to finalize the settlement. Subsequently, the parties informed the Court that a settlement was not, in fact, possible. It appears that plaintiff attempted settlement again and informed defendant that if a settlement could not be reached, it intended to dismiss its claims. Just before plaintiff sought dismissal of its claims, defendant filed the instant motion for sanctions, which plaintiff opposes.

### ANALYSIS

The Federal Circuit applies the law of the regional circuit in reviewing the grant or denial of a Rule 11 motion for sanctions. *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406–07 (Fed.Cir. 2004). The Supreme Court has explained that "the central purpose of Rule 11 is to deter baseless filings in district court ...." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Thus, sanctions may be imposed under Rule 11 if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988). Rule 11 requires that attorneys "conduct a reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 400–401 (6th Cir. 2009) (citing Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendment). A district court's ruling on a Rule 11 motion is reviewed for an abuse of discretion.

2

In its motion, defendant argues that plaintiff failed to conduct a pre-suit investigation. According to defendant, plaintiff lacked a reasonable basis to bring an infringement action because a reasonable investigation would have revealed that defendant had been selling the accused instrumentalities for nearly a decade before the patents-in-suit were filed. As such, the patents-in-suit are invalid. At the same time, defendant argues that plaintiff maintained this lawsuit even though "all of the discovery to date demonstrates that the fuel made by defendant since the Asserted Patents does not meet a key limitation of the Asserted Patents prohibiting anything but a trace amount of certain materials."

With regard to its pre-suit investigation, defendant argues that it manufactured fuel for two different customers. Although the requirements may have been different, the process implemented by defendant throughout the years did not change. Accordingly, because the same process and product is at issue now, defendant's prior commercialization of the fuel renders the patents invalid. Defendant claims that various public documents, including Cemex's application to the Florida Department of Environmental Protection, a 2011 Technical Evaluation and Preliminary Determination for applicant Tarmac American, LLC, a USEPA report entitled Cement Sector Trends in Beneficial Use of Alternative Fuels and Raw Materials, a Geocycle article, and another article entitled "Keying in on Quality," support its position. According to defendant, these documents show that defendant was manufacturing an engineered fuel prior to plaintiff's priority date that fell within the range of carbon and hydrogen claimed in the patents-in-suit.

In addition, defendant argues that plaintiff should have known that patent claims directed to an engineered fuel possessing only naturally occurring amounts of elements in unprocessed

and processed waste streams minus noncombustible waste are ineligible for patenting under Section 101.

In response, plaintiff argues that it conducted more than an adequate pre-suit investigation. Plaintiff also points out that defendant refused to provide plaintiff with a sample of defendant's fuel and also shut down licensing negotiations during which plaintiff was attempting to obtain specifications and details regarding defendant's fuel. Plaintiff also claims that defendant's arguments regarding invalidity are not supported, and publicly available information discussing defendant's "changed" process supports the filing of this lawsuit. Plaintiff points out that the existence of several licensing agreements belie the imposition of sanctions based on invalidity.

Upon review, the Court agrees with plaintiff. A "key factor in determining whether a patentee performed a reasonable prefiling inquiry is the presence of an infringement analysis," which "can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter." *Q-Pharma, Inc. v. Andrews Jergens Co.,* 360 F.3d 295, 1302 (Fed. Cir. 2004)(affirming a district court's denial of sanctions on a patentee who "could have easily performed a chemical analysis of the accused product" but did not do so). Here, plaintiff offers an affidavit from counsel indicating that counsel conducted an informed comparison of the claims with information publicly available to it. Counsel further avers that he prepared a claim chart. In addition, co-counsel for plaintiff avers that he attempted to obtain a sample from defendant prior to filing the lawsuit, but defendant refused. Based on these affidavits, the Court cannot say that sanctions are warranted based on plaintiff's alleged failure to conduct an adequate pre-suit investigation.

The Court further rejects defendant's argument that sanctions are warranted as a result of plaintiff's failure to conclude that its own patents are invalid. It is well-settled that an issued patent enjoys a presumption of validity. In light of that presumption, and together with the fact that several entities entered into licensing agreements under the patents, it was not objectively unreasonable for plaintiff to file this lawsuit. *See, Q-Pharma*, 360 F.3d at 1303. Although defendant argues that the entities licensing use of the patents are somehow related or controlled by plaintiff, this fact does not necessarily aid defendant in its argument. It is entirely unclear why an entity who knows a patent is invalid would nonetheless pay to license that same patent. Regardless, defendant has not demonstrated that it was baseless for plaintiff to rely on the presumption of patent validity and the existence of the licenses. For these reasons alone, sanctions are not warranted.

And, with regard to certain specific arguments raised by defendant as to invalidity, defendant's own actions in this case undercut its position now. By way of example, defendant argues that plaintiff knew that defendant's prior commercialization of the fuel renders the patents invalid. But, later in the instant motion, defendant argues that it does not infringe because "there is zero evidence showing that the "substantially free" limitation is infringed by Vexor's fuel.... More damning, however, are communications...showing that the process used by Vexor to make the fuel resulted in fuel having greater than 0.01% of noncombustible material." But, it is entirely inconsistent to claim noninfringement, while also claiming that prior commercialization renders the patents invalid.[1] And, although defendant argues that the patent is invalid under Section 101 for lack of subject matter eligibility, it did not move to dismiss the complaint even

---

[1]     Defendant argues that its process never changed over time.

though this Court on several occasions has dismissed cases on this very basis. *See, e.g.,* *Cleveland Clinic Foundation v. True Health Diagnostics, LLC*, 2016 WL 705244 (N.D. Ohio Feb. 23, 2016) *aff'd*, 859 F.3d 1352 (Fed.Cir.2017)(dismissing case based on Section 101 invalidity). For these additional reasons, the Court finds that sanctions are not warranted based on plaintiff's failure to acknowledge the alleged invalidity of its patents.

Defendant briefly argues that, for essentially the same reasons set forth above, the continuation of the lawsuit violates Rule 11. According to defendant, plaintiff knew "months ago" and from defendant's summary judgment motion that the fuel produced by defendant fell within the specified weight ranges for carbon and hydrogen and that the limitation directed at the weight of glass, metals, grit and noncombustible waste is anticipated or rendered obvious by defendant's prior commercialization. In other words, defendant claims that plaintiff should not have persisted with this lawsuit in the face of defendant's invalidity argument. At the same time, defendant argues that there is no evidence that its fuel infringes the "0.01% noncombustible material" limitation. According to defendant, plaintiff's customer confirmed this fact during his November 3, 2017 deposition. Defendant notes that in response to its early summary judgment motion, plaintiff requested discovery. The Court granted that request, but plaintiff "abandoned" this discovery in favor of "phantom claims" involving a defendant-related entity in Indiana.

In response, plaintiff argues that testing of the samples provided by defendant demonstrates that the "0.01% noncombustible material" limitation is satisfied, at least with respect to some of the samples. Plaintiff further argues that the evidence demonstrates that defendant altered its production facilities, including adding size reduction and separation equipment. Plaintiff claims that the new equipment was intended to remove additional "heavy

material," including metal. As such, plaintiff maintained a reasonable belief that the asserted claims are not anticipated by defendant's pre-2008 commercialization. Plaintiff further points out that it requested pre-2008 fuel samples or documentation sufficient to show the percentage weight of glass, metals, grit, and noncombustible waste contained in pre-2008 fuel. But, defendant has not produced either.

Upon review, the Court agrees with plaintiff that sanctions are not warranted for plaintiff's continuation of this lawsuit. As an initial matter, defendant appears to reargue the same points it raised in conjunction with its pre-suit investigation argument, which the Court rejected above. In other words, defendant points to nothing that arose during the litigation that would alter this Court's conclusion regarding a good faith basis for this lawsuit. Defendant strongly disputes that the testing relied on by plaintiff actually supports a claim for infringement. According to defendant's expert, the testing is inconclusive and was not performed in a manner consistent with the appropriate testing standard. But, as plaintiff points out, it need not *establish* infringement in order to avoid sanctions. Rather, it need only possess a reasonable belief that at least some of the materials manufactured by defendant infringed. The Court finds that plaintiff succeeds in this regard. Although the testing does not show the cumulative weight of certain ingredients in the fuel, it does show both glass and metals have less than 0.01% wt. This arguably supports an allegation of infringement. The same holds true with respect to the testing procedure. Defendant disputes the contention made by plaintiff's expert that the testing was performed in accordance with proper testing protocol. But, once again, plaintiff need not prove its claims at this point.

Although standing alone, the timing of the motion may not warrant its denial, in

conjunction with the aforementioned, the Court finds that the timing weighs against the imposition of sanctions. Here, the complaint was filed on February 28, 2017, yet defendant did not serve a motion for sanctions (thus triggering the safe harbor provision) until one *year* later. Moreover, as plaintiff points out, the parties thereafter informed the Court that a settlement was reached and the Court stayed this matter for a number of months. When the settlement fell apart, plaintiff informed defendant that it intended to dismiss its claims with prejudice on October 29, 2018, should the parties be unable to settle this matter. Only then did defendant file the instant motion at 2:17 a.m. on October 29, 2018. The Court finds that defendant's one-year delay in presenting plaintiff with its motion for sanctions undercuts defendant's argument that plaintiff lacked a basis for filing the complaint in the first place. Moreover, it is apparent that defendant moved the Court for sanctions only after the parties' settlement fell apart and only after plaintiff indicated that it intended to dismiss the allegedly meritless claims that day. While standing alone, these facts may not be sufficient to warrant the denial of defendant's motion, they offer further support for the Court's analysis above.

### **CONCLUSION**

For the foregoing reasons, Vexor's Motion for Sanctions Under Fed. R. Civ. Pro. 11 (Doc. 106) is DENIED.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan          
PATRICIA A. GAUGHAN
United States District Court
Chief Judge

Dated: 2/1/19

8